**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| HAWKEYE GOLD, LLC, | * | CIVIL NO. 4:16-cv-00355-SBJ |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CHINA NATIONAL MATERIALS | * | **ORDER** |
| INDUSTRY IMPORT AND EXPORT | * | |
| CORPORATION d/b/a SINOMA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

## I. INTRODUCTION

Before the Court is a Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 164) filed by defendant China National Materials Industry Import and Export Corporation d/b/a Sinoma ("Sinoma"). Sinoma contends this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Sinoma emphasizes it is a Chinese corporation and asserts it has insufficient contacts with Iowa for this Court to have jurisdiction. Sinoma also contends the case should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Sinoma asserts plaintiff's claims are barred by the doctrines of merger and res judicata/claim preclusion due to the entry of default judgment obtained by plaintiff against its subsidiary in a prior lawsuit.

Plaintiff Hawkeye Gold, LLC ("Hawkeye Gold") resists the motion. Dkt. 168. Hawkeye Gold first contends Sinoma waived its challenge to personal jurisdiction. In turn, Hawkeye Gold asserts this Court has personal jurisdiction over Sinoma due to sufficient contacts with Iowa. Hawkeye Gold also contends the doctrines of merger and res judicata do not bar its claims. Sinoma refutes those assertions in reply (Dkt. 169) to which Hawkeye Gold filed a sur-reply (Dkt. 173).

The Court considers the motion to be fully submitted. Oral argument by counsel has not been requested and is not necessary. L.R. 7(c). For the reasons which follow, the Motion to Dismiss Plaintiff's Second Amended Complaint is granted due to lack of personal jurisdiction over defendant.

## II. BACKGROUND

Hawkeye Gold is an Iowa-based marketer of feed products. Dkt. 157 ¶ 6. Hawkeye Gold entered into dozens of contracts over two years with Non-Metals Inc. ("Non-Metals") for the purchase of dried distiller's grain with solubles ("DDGS"). *Id.* Sinoma is the principal and sole shareholder of Non-Metals, a United States company. *Id.* A final purchase contract for DDGS was entered into with Non-Metals in July 2014. *Id.* ¶ 8. Hawkeye Gold alleges that "[upon instruction from Sinoma, Non-Metals repudiated and defaulted on the contract while part of the shipment was on the water in route to China." *Id.*

In July 2015, Hawkeye Gold brought a lawsuit against Non-Metals for breach of contract. *See Hawkeye Gold, LLC v. Non-Metals, Inc.*, Civil No. 4:15-cv-00230-REL-RAW (S.D. Iowa 2015) ("*Hawkeye Gold I*). Within its First Amended Complaint, Hawkeye Gold asserted the following:

> Non-Metals is an Arizona corporation with its principal place of business in Bolingbrook, Illinois. Non-Metals is owned and, upon information and belief, at minimum under certain influence of the Chinese National Materials Industry Import and Export Corporation known as Sinoma ("Sinoma").

*Hawkeye Gold I*, Dkt. 4 ¶ 2. In support of its claim for breach of contract, Hawkeye Gold alleged the following facts:

> Hawkeye Gold markets feed products produced by ethanol plants including dried distillers grains with solubles ("DDGS"). Non-Metals is engaged in the business of buying DDGS and, upon information and belief, has done so at least in part at the request, and/or for the benefit, of Sinoma or one of its designees.

> On or about July 22, 2014, Hawkeye Gold entered into the Contract with Non-

Metals for the sale of DDGS. . . .

Hawkeye Gold shipped several tons of DDGS to Non-Metals and, upon information and belief, has did so at least in part at the request, and/or for the benefit, of Sinoma or one of its designees. Non-Metals failed to pay invoices issued by Hawkeye Gold totaling $737,048.05 relating to the DDGS in accordance with the Contract. . . .

Hawkeye Gold has made demand to Non-Metals for payment owed to Hawkeye Gold under the terms of the Contract but no payment has been received.

*Id.* ¶¶ 5-8. For the elements of the claim, Hawkeye Gold alleged as follows:

A valid enforceable contract exists in the form of the Contract by and between Hawkeye Gold and Non-Metals.

The terms and conditions of the Contract required Hawkeye Gold to deliver shipments of DDGS to Non-Metals and for Non-Metals to make full payment to Hawkeye Gold.

Hawkeye Gold has performed all the terms and conditions required under the Contract including delivery or attempted delivery of the DDGS to Non-Metals under the terms of the Contract.

Non-Metals breached the Contract in at least these particular ways, that is, by refusing to accept delivery of the DDGS delivered or attempted to be delivered by Hawkeye Gold pursuant to the Contract and further by failing to make payment in the amount of $737,048.05 under invoices delivered to Non-Metals and due and owing under the Contract.

Hawkeye Gold has suffered damages as a result of the breach of the Contract by Non-Metals in the amount of $737,048.05 plus interest.

*Id.* ¶¶ 10-14. Sinoma was not named as a defendant in this lawsuit.

Non-Metals did not file an answer or otherwise respond to the complaint. Upon motion by Hawkeye Gold, the Clerk of Court entered default against Non-Metals. *Hawkeye Gold I*, Dkt. 11. Upon further motion by Hawkeye Gold, and order of the Court, default judgment was entered in April 2016 "in favor of Hawkeye Gold, LLC. and against Non-Metals, Inc. in the total amount of $748,103.69 representing the amount owed by Non-Metals, Inc. under contract and accrued interest at the contract interest rate." *Hawkeye Gold I*, Dkt. 21. Judgment was additionally entered "for attorney fees and costs in the total amount of $8,089.07" plus post-judgment interest. *Id.*

3

In June 2016, Hawkeye Gold initiated this present action with the filing of a Complaint and Jury Demand against Sinoma. Dkt. 1. In this initial Complaint, Hawkeye Gold asserted:

> Sinoma is a wholly-owned subsidiary, agency and instrumentality, and trade platform of China National Materials Group Corporation Ltd. a/k/a Sinoma Group ("Sinoma Group"). Sinoma Group, among other things, is engaged in international trade and has subsidiaries or branches in more than 60 foreign countries or regions including the United States. Sinoma is the principal and sole shareholder of Non-Metals, Inc. ("Non-Metals"), an Arizona corporation serving as agent of Sinoma with its principal place of business, upon information and belief, in Bolingbrook, Illinois.

*Id.* ¶ 2. Hawkeye Gold further alleged:

> Non-Metals on behalf of Sinoma entered into dozens of contracts over two years with Hawkeye Gold for the purchase of dried distiller's grain with solubles ("DDGS").

> Sinoma employees were involved in either negotiating or executing the performance of contracts for Non-Metals, upon information and belief, while acting under the direction and control of Sinoma. Bills of lading, certificates of origin and other shipping documents relating to the sale of DDGS from Hawkeye Gold to Non-Metals expressly show the DDGS was for the benefit of Non-Metals' principal, Sinoma.

> Hawkeye Gold executed its final purchase contract with Non-Metals on behalf of Sinoma in July 2014. Upon instruction from Sinoma, Non-Metals repudiated and defaulted on the contract while part of the shipment was on the water in route to China. Hawkeye Gold demanded payment for DDGS under the contract. . . .

> Hawkeye Gold brought suit against Non-Metals in this Court. Non-Metals defaulted. This Court entered judgment in favor of Hawkeye Gold in the amount of $756,192.76. The judgment remains unpaid.

*Id.* ¶¶ 11-14.

Hawkeye Gold indicated it "brought this action to recover the amount of the judgment plus other relief from Sinoma as Non-Metals' principal under the contract." *Id.* ¶ 14. It is further stated:

> The jurisdiction of this Court over Sinoma is governed by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611 (the "FSIA") for the reason that, upon information and belief, Sinoma is an "agency or instrumentality of a foreign state" with "a majority of [its] shares or other ownership interest . . . owned by a foreign state" pursuant to 28 U.S.C. § 1603(b)(2).

*Id.* ¶ 3. Hawkeye Gold asserted a claim for breach of contract "executed by and between Hawkeye Gold and Non-Metals, the latter acting on Sinoma's behalf and subject to Sinoma's control as its agent." *Id.* ¶ 28.

Due to issues with service of process and proceedings as to entry of default which was ultimately set aside (Dkt. 97), Sinoma did not file an answer to the initial complaint until May 2021. In its Answer, Sinoma stated:

> Sinoma admits that it is a company registered in China and a wholly-owned subsidiary of China National Building Material Group Co. Ltd., which is 100% owned by the Chinese central government. Sinoma admits Non-Metals Inc. ("Non-Metals"), an Arizona company, was a wholly-owned subsidiary of Sinoma. Further, Sinoma admits to the extent that Sinoma is engaged in international trade.

Dkt. 98 ¶ 2. Sinoma acknowledged Hawkeye Gold entered a contract with Non-Metals but "specifically and expressly denies that Non-Metals was an agent of Sinoma." *Id.* ¶ 4. As an affirmative defense, Sinoma asserted "the Court lacks personal jurisdiction over Sinoma because Sinoma did not have the minimum contact with the forum state, and the Complaint should therefore be dismissed against the Sinoma under Rule 12(b)(2) of the Federal Rules of Civil Procedure." *Id.* p. 5. Sinoma also asserted Hawkeye Gold's "claims are barred by the Foreign Sovereign Immunities Act ("FSIA") as Sinoma is an instrumentality of the Chinese government." *Id.* Sinoma further asserted, , *inter alia*, Hawkeye Gold's "claims are barred by the Doctrine of Lack of Privity, as Sinoma has never signed or executed any contract with Hawkeye [Gold]" and by judicial estoppel. *Id.* pp. 6-7.

A Stipulation Regarding First Amended Complaint (Dkt. 109) was later filed by the parties which stated as follows:

> [Sinoma] has informed [Hawkeye Gold] it now seeks to remove and/or waive any and all prior allegations or contentions made relating to the Foreign Sovereign Immunity Act of 1976 (the "FSIA"), 28 U.S.C. §§ 1602-1611, and further withdraws its affirmative defense based on the FSIA.

> Hawkeye Gold has prepared the attached proposed First Amended Complaint ("FAC") for filing solely as a result of Sinoma's new information to Hawkeye Gold regarding the FSIA. Sinoma stipulates, subject to the Court's approval, to Hawkeye Gold filing the FAC in the form of the pleading attached hereto as Exhibit 1 within three (3) business days without the need to file a motion for leave to amend. Sinoma further stipulates Hawkeye Gold should not be prejudiced by virtue of this stipulation in the event it seeks leave to make further amendment to the FAC. Neither Hawkeye Gold nor Sinoma, by entering into this Stipulation, is agreeing to the truth of the matters alleged in any pleading filed by the other party.

*Id.* pp. 1-2. Given the stipulation of the parties, the Court granted Hawkeye Gold leave to file the amended complaint. Dkt. 110.

Hawkeye Gold subsequently filed a First Amended Complaint and Jury Demand (Dkt. 111) containing similar allegations and breach of contract claim as originally asserted but without reference to FSIA. In Answer to the amended complaint, Sinoma again acknowledges Hawkeye Gold executed the contract with Non-Metals but again "specifically and expressly denies that Non-Metals was an agent of Sinoma." Dkt. 112 ¶ 21. Sinoma reiterated affirmative defenses including "that the Court lacks personal jurisdiction over Sinoma because Sinoma did not have the minimum contact with the forum state, and the Complaint should therefore be dismissed against the Sinoma under Rule 12(b)(2) of the Federal Rules of Civil Procedure," Hawkeye Gold's "claims are barred by the Doctrine of Lack of Privity, as Sinoma has never signed or executed any contract with Hawkeye [Gold]" and Hawkeye Gold's "claims are barred by judicial estoppel." *Id.* pp. 5-7.

Hawkeye Gold then filed a Motion for Leave to File Second Amended Complaint (Dkt. 116) and Simona filed a Motion for Judgment on the Pleadings (Dkt. 119). Hawkeye Gold requested leave to file a second amended complaint to add factual allegations and legal claims for punitive damages. Dkt. 116. Sinoma contended the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(c) for judgment on the pleadings. Dkt. 119.

The Court granted Hawkeye Gold leave to file its second amended complaint. Dkt. 156.

Sinoma's Motion for Judgment on the Pleadings was denied, but without prejudice to reassert its contentions against the second amended complaint. *Id.* Hawkeye Gold filed its Second Amended Complaint and Jury Demand (Dkt. 157). Sinoma filed the Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 164) which is now under consideration of the Court.

### III. HAWKEYE GOLD'S SECOND AMENDED COMPLAINT

Hawkeye Gold's Second Amended Complaint and Jury Demand (Dkt. 157) is similar to its prior complaints. Hawkeye Gold again asserts as follows:

> Sinoma is a wholly owned subsidiary and trade platform of China National Materials Group Corporation Ltd. a/k/a Sinoma Group ("Sinoma Group"). Sinoma Group, among other things, is engaged in international trade and has subsidiaries or branches in more than 60 foreign countries or regions, including the United States. Sinoma is the principal and sole shareholder of Non-Metals, Inc. ("Non-Metals"), an Arizona corporation serving as agent of Sinoma with its principal place of business, upon information and belief, in Bolingbrook, Illinois.

*Id.* ¶ 2. It is further asserted:

> Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) because Hawkeye Gold resides in this district and Sinoma, through its agent Non-Metals, has conducted business in this district. Venue also is proper in this Court under 28 U.S.C. § 1391(b)(3) because Sinoma is not a resident in the United States. Venue further is proper under the forum-selection clause in the Contract at issue in this action executed by Non-Metals in its capacity as an agent for its principal, Sinoma.

*Id.* ¶ 5. As an Introduction, Hawkeye Gold makes the following allegations:

> Hawkeye Gold is an Iowa-based marketer of feed products. Sinoma is the principal and sole shareholder of Non-Metals, a U.S. company previously engaged in purchasing feed for Sinoma. Non-Metals, on behalf of Sinoma, entered into dozens of contracts over two years with Hawkeye Gold for the purchase of dried distiller's grain with solubles ("DDGS").
>
> Sinoma employees were involved in either negotiating or executing the performance of contracts for Non-Metals, upon information and belief, while acting under the direction and control of Sinoma. Bills of lading, certificates of origin and other shipping documents relating to the sale of DDGS from Hawkeye Gold to Non-Metals expressly show the DDGS was for the benefit of Non-Metals' principal, Sinoma.
>
> Hawkeye Gold executed its final purchase contract with Non-Metals on behalf of

Sinoma in July 2014. Upon instruction from Sinoma, Non-Metals repudiated and defaulted on the contract while part of the shipment was on the water in route to China.

*Id.* ¶¶ 6-8.

Hawkeye Golds makes the following additional allegations as to the "relationship of

parties":

> Sinoma is the trade platform for Sinoma Group and is an integrative import and export corporation with trade relationships with customers from more than 100 countries and regions in the world.

> Upon information and belief, Sinoma is engaged in the business of buying DDGS in the United States for shipment to China through Non-Metals, Sinoma's agent and subsidiary. Non-Metals engaged in buying and shipping DDGS on Sinoma's behalf. As Sinoma's agent, Non-Metals procured essential materials from American vendors on Sinoma's behalf, including DDGS from Hawkeye Gold.

> On or about July 22, 2014, Hawkeye Gold entered into the Contract. Jason Mao ("Mao"), a Sinoma Feed Department Senior Manager (who later delivered his business card to Hawkeye Gold in Iowa specifically identifying himself as a Sinoma employee), negotiated the terms of the Contract with Hawkeye Gold's representative on behalf of Non-Metals. Mao entered into the Contract for the purchase of DDGS from Hawkeye Gold to be produced or coordinated from Hawkeye Gold's headquarters in Iowa. At all relevant times, Non-Metals, upon information and belief, acted with actual and apparent authority on Sinoma's behalf, for Sinoma's objective benefit and under Sinoma's control. . . .

> The Contract does not specifically name or identify Sinoma as the principal, but Hawkeye Gold had notice of Sinoma's identity as Non-Metals' principal. From mid-2012 through fall 2014, Mao and others associated with Sinoma entered into dozens of agreements with Hawkeye Gold for the purpose of purchasing DDGS for Sinoma. In addition to Mao, Hawkeye Gold received a business card from Wei Chao ("Chao"), a Sinoma employee who, upon information and belief, also was involved in Non-Metals' relationship with Hawkeye Gold. Further, Zonghuai Li is a Sinoma Vice General Manager who served as President of Non-Metals in the United States and, upon information and belief, also was involved with Non-Metals' relationship in purchasing DDGS from Hawkeye Gold for delivery to Sinoma. Documentation delivered to Hawkeye Gold for the purchase of DDGS by Non-Metals, including the first trade in mid-2012, identified Sinoma's website and telephone number in the signature block. Shipping documentation also listed Sinoma as the known "consignee" for the "buyer" Non-Metals with regard to the DDGS purchased from Hawkeye Gold for Sinoma. In short, that Non-Metals made the Contract as Sinoma's agent is ascertained by fair implication, from the relations of the parties, the nature of the business of the agency, the service to be rendered,

the purpose or transaction to be consummated and the other circumstances surrounding Hawkeye Gold's prior dealings with Non-Metals and Sinoma. . . .

The effect that Sinoma's conduct and/or communications had on Hawkeye Gold, and the actions of Sinoma as the principal, led Hawkeye Gold to act in good faith on the reasonable presumption it was dealing with Sinoma's agent. In contracting with Hawkeye Gold, Non-Metals acted on authority as Sinoma's agent (either knowingly permitted by Sinoma or from authority Sinoma holds Non-Metals out as possessing to others).

*Id.* ¶¶ 11-15. Hawkeye Gold further alleges the following events occurred:

Hawkeye Gold shipped approximately 1,000 tons of DDGS under the Contract via a Bill of Lading designating Sinoma as the notifying party and including a Certificate of Origin designating Sinoma as the consignee. A bill of lading operates as both a receipt and a contract. A bill of lading on which a party is named as a consignee binds that party to the agreement. Sinoma is bound to the Bill of Lading through its agency relationship with Non-Metals, one of the contracting parties, as an intended beneficiary of the Contract. . . .

On or about August 15, 2014, Sinoma informed Non-Metals through a business letter dated August 15, 2014 ("August 15 letter") a Chinese agency (China AQSIQ) had "stopped the DDGS importing procession" and a Sinoma representative instructed a Non-Metals representative to "pay much more attention to the ban and . . . not ship the goods anymore" and further stated, "If not, there would be massive loss for both you and me." . . .

Under Sinoma's direction, and as a result of the August 15 letter, upon information and belief, Non-Metals repudiated and defaulted under the Contract while DDGS shipped by Non-Metals was "on the water" in route to China. Sinoma through Non-Metals also failed and refused to pay for DDGS purchased under the Contract but not yet shipped.

Under Sinoma's direction, and as a result of the August 15 letter, upon information and belief, Non-Metals failed to pay invoices issued by Hawkeye Gold totaling $737,048.05 relating to the DDGS, as required by and in accordance with the Contract.

Hawkeye Gold made demand on Sinoma's agent, Non-Metals, for payment owed to Hawkeye Gold under the Contract, but no payment has been received by Hawkeye Gold.

*Id.* ¶¶ 21-25.

With those allegations, Hawkeye Gold asserts the following claim of breach of contract

against Sinoma:

The existence of a contract is shown by the Contract executed by and between Hawkeye Gold and Non-Metals, the latter acting on Sinoma's behalf and subject to Sinoma's control as its agent:

    a. Agency between Sinoma and Non-Metals results from (1) manifestation of consent by Sinoma, the principal, that another, Non-Metals, the agent, shall act on the former's behalf and subject to the former's control; and (2) consent by the latter, Non-Metals, to so act. Sinoma manifested such consent, and Non-Metals consented to so act.

    b. Non-Metals executed the Contract while acting within the scope of its actual authority as an agent for its principal, Sinoma, binding Sinoma to the Contract.

    c. Alternatively, Non-Metals executed the Contract within the apparent scope of authority conferred on it by its principal, Sinoma, binding Sinoma to the Contract.

Hawkeye Gold has performed all the terms and conditions required under the Contract, including delivery or attempted delivery of the DDGS to Sinoma's agent, Non-Metals.

Sinoma breached the Contract in a particular way, namely, by refusing through its agent, Non-Metals, to accept delivery of the DDGS delivered or attempted to be delivered by Hawkeye Gold pursuant to the Contract and further by failing to make, or cause to be made, payment in the amount of $737,048.05 under invoices delivered to Sinoma's agent, Non-Metals, which amount became part of a judgment of this Court and remains due and owing under the Contract.

Sinoma is liable to Hawkeye Gold for breach of contract and damages and harm flowing from same as a result of Sinoma's conduct, which authorizes Hawkeye Gold to disregard the corporate entity of Non-Metals, whether as an alter ego, mere instrumentality or other theory, including ratification or incorporation by reference.

Hawkeye Gold has suffered damages as a result of the breach of the Contract and other conduct by Sinoma and its agent, Non-Metals, in the amount of $748,103.69, including interest and attorney's fees, which amount was conclusively established by the judgment entered by Order of this Court against Sinoma's agent, Non-Metals, in *Hawkeye Gold, LLC v. Non-Metals, Inc.*, 4:15-cv-00230-REL-RAW (S.D. Iowa Jan. 27, 2015) (Longstaff, S.J.).

In the alternative, to the extent necessary, Non-Metals and Sinoma were not joint contractors. Recovery of judgment against Non-Metals, agent of Sinoma, a disclosed or partially disclosed principal, for failure of performance under the Contract (to which Non-Metals, as the agent, is a party) does not thereby discharge Sinoma's liability as the principal.

*Id.* ¶¶ 33-38. Hawkeye Gold seeks compensatory damages of at least $748,103.69 plus punitive damages. *Id.* p. 13.

Attached to the Second Amended Complaint are copies of the July 22, 2014 Sales Contract between Hawkeye Gold and Non-Metals, the business cards of Wei Chao and Jason Mao, the Bill of Lading and Certificate of Origin, and the August 15, 2014 letter referred to within the allegations. *Id.* pp. 15-22.

### IV. SINOMA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

In the Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 164), Sinoma contends this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Sinoma emphasizes it is a company registered and incorporated in China with its principal place of business in Beijing; and has no offices or places of business in Iowa, conducts no business in Iowa, and has no Iowa-based subsidiaries. Sinoma insists it lacks sufficient contacts with Iowa for this Court to have personal jurisdiction. Sinoma also contends the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Sinoma asserts Hawkeye Gold's claims are barred by the doctrines of merger and res judicata/claim preclusion due to the entry of default judgment obtained by Hawkeye Gold against Non-Metals.

In resistance (Dkt. 168), Hawkeye Gold first argues Sinoma waived its challenge to personal jurisdiction. In turn, Hawkeye Gold asserts this Court has personal jurisdiction over Sinoma due to sufficient contacts with Iowa. Hawkeye Gold also contends the doctrines of merger and res judicata do not bar its claims.

### A. Waiver

Hawkeye Gold contends Sinoma waived the defense of lack of personal jurisdiction when it failed to raise it at the time Sinoma sought to set aside entry of default. Dkt. 168 pp. 5, 7-8.

Sinoma contends the argument is factually and legally baseless. Dkt. 169 pp. 2-3. The Court is not persuaded Sinoma waived its defense of personal jurisdiction.

Hawkeye Gold does not cite to precedential authority from the Court of Appeals for the Eighth Circuit to support its argument. Nor does Hawkeye Gold cite to any rule of procedure. In that regard, Federal Rule of Civil Procedure 12(b) provides as follows:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19.
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b). Under Rule 12(h), a party waives a defense in Rule 12(b)(2)-(5) by:

> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
>
> (B) failing to either:
>
> > (i) make it by motion under this rule; or
> >
> > (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1).

Sinoma explicitly asserted the defense of lack of personal jurisdiction in its Answers to Hawkeye Gold's initial Complaint and First Amended Complaint. Dkt. 98 p. 5; Dkt. 112 p. 5. In response to Hawkeye Gold's Second Amended Complaint, Sinoma filed the motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction now before the Court. Given the pleadings within this case, the Court is not convinced Sinoma waived the defense of lack of personal jurisdiction.

**B. Personal Jurisdiction**

"Personal jurisdiction over a defendant represents the power of a court to enter "'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592-93 (8th Cir. 2011) (quoting *Kulko v. Superior Court of Cal.,* 436 U.S. 84, 91 (1978)). "'[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.'" *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (quoting *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 881 (2011)). Here, Sinoma contends this Court within the Southern District of Iowa lacks personal jurisdiction to enter a valid judgment against it and, therefore, requests dismissal of the case. Hawkeye Gold contends Sinoma's contacts with Iowa are sufficient to establish personal jurisdiction and, therefore, urges the Court to deny Sinoma's motion.

**1. Applicable Standards for Personal Jurisdiction**

"To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014); *see also*, *e.g.*, *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011); *Viasystems*, 646 F.3d at 592. The "plaintiff's prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Fastpath*, 760 F.3d at 820 (quoted citation omitted). If there is no hearing held on the motion, the court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Id.*; *see also*, *e.g.*, *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 758 (2022); *Whaley v. Esebag*, 946 F.3d 447, 451

(8th Cir. 2020); *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 848 (8th Cir. 2017); *K-V Pharm.*, 648 F.3d at 592; *Viasystems,* 646 F.3d at 593.

The United States Supreme Court has identified two types of personal jurisdiction: specific and general. *See*, *e.g.*, *Fastpath*, 760 F.3d at 820 (quoting *Viasystems,* 646 F.3d at 593); *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state.'" *Fastpath*, 760 F.3d at 820 (quoted citations omitted). Specific jurisdiction "is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch*, 518 F.3d at 586 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). General jurisdiction is "'the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems,* 646 F.3d at 593 (quoted citations omitted). "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586. Here, Hawkeye Gold asserts Sinoma is subject to specific jurisdiction in Iowa.

"'Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Fastpath*, 760 F.3d at 820 (quoting *Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc.,* 702 F.3d 472, 475 (8th Cir. 2012) (quoting *Viasystems,* 646 F.3d at 593)); *see also*, *e.g.*, *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021); *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019); *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015); *K-V Pharm.*, 648 F.3d at

592. "Because Iowa's long-arm statute expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution, [the court's] inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Fastpath*, 760 F.3d at 820 (internal quotation marks omitted) (quoting *Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Hammond v. Florida Asset Fin. Corp.,* 695 N.W.2d 1, 5 (Iowa 2005))); *see also Creative Calling*, 799 F.3d at 979.

"'Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction.'" *Morningside Church*, 9 F.4th at 619 (quoting *Creative Calling*, 799 F.3d at 980). As explained by the Eighth Circuit:

Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Guinness Import Co. v. Mark VII Distribs., Inc.,* 153 F.3d 607, 614 (8th Cir. 1998). Minimum contacts is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro,* ––– U.S. ––––, 131 S.Ct. 2780, 2787, 180 L.Ed.2d 765 (2011). A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 694 (8th Cir. 2003); *Epps,* 327 F.3d at 648. Sufficient minimum contacts requires some act by which the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre,* 131 S.Ct. at 2787 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)); see *Romak USA, Inc. v. Rich,* 384 F.3d 979, 984 (8th Cir. 2004).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Stanton,* 340 F.3d at 693–94 (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore,* ––– U.S. ––––, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). This means that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 1122

(quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84). Contacts between the plaintiff and the forum State do not satisfy this inquiry. *Id.* "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Stanton,* 340 F.3d at 694 (quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84).

*Fastpath*, 760 F.3d at 820-21; s*ee also*, *e.g.*, *Morningside Church*, 9 F.4th at 619; *Federated Mut.*, 928 F.3d at 720; *Creative Calling*, 799 F.3d at 980; *K-V Pharm.*, 648 F.3d at 592.

The following five factors are weighed to assess the defendant's contacts with the forum state:

> "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties."

*Morningside Church*, 9 F.4th at 619 (quoting *Federated Mut.*, 928 F.3d at 720); *see also*, *e.g.*, *Kaliannan*, 2 F.4th at 733; *Aly*, 864 F.3d at 849; *Fastpath*, 760 F.3d at 821; *K-V Pharm.*, 648 F.3d at 592; *Steinbuch*, 518 F.3d at 586. "The first three factors are 'of primary importance,' while the fourth and fifth factors 'carry less weight.'" *Morningside Church*, 9 F.4th at 620 (quoting *Whaley*, 946 F.3d at 452); *see also Fastpath*, 760 F.3d at 821 ("We give significant weight to the first three factors."). The factors are considered under the "totality of circumstances" to determine whether personal jurisdiction exists. *Kaliannan*, 2 F.4th at 733 (quoting *K-V Pharm.*, 648 F.3d at 592-93).

### 2. Contentions of the Parties

Sinoma maintains it did not act purposefully to avail itself of doing business within Iowa and did not conduct activities within Iowa which constitute sufficient minimum contacts for personal jurisdiction. Sinoma acknowledges Hawkeye Gold's principal place of business for selling DDGS is in Iowa. Sinoma further acknowledges one of Hawkeye Gold's regular customers was Sinoma's wholly owned subsidiary Non-Metals which is based in the United States and with which Hawkeye Gold entered dozens of contracts for the purchase and sale of DDGS between

2012 and 2014. This includes the contract at issue entered by Hawkeye Gold and Non-Metals on July 22, 2014. Sinoma emphasizes, however, it was never a party to the contract with Hawkeye Gold. Instead, "it only purchased feed from its Arizona subsidiary" Non-Metals. Dkt. 164-1 p. 17.

Sinoma notes it "is a company registered and incorporated in China; its principal place of business is in Beijing; and it has no offices or places of business in Iowa and conducts no business in Iowa and has no Iowa-based subsidiaries." *Id.* p. 12. It is further noted:

> Sinoma has never made any sales or purchases of products in the State of Iowa. Sinoma's corporate website is not aimed at Iowa. Sinoma has no employees or contractors in Iowa, has no ownership or lease of real property there, has no assets or bank accounts there, has no sales channels or personnel in Iowa, and has not advertised or marketed there. Further, Sinoma is not licensed to do business in Iowa and has no registered agent in Iowa.

*Id.* pp. 12-13 (internal citations to record omitted). As explained by Sinoma, "[t]he only visits made to Iowa by Sinoma employees were only one day each on three occasions: in 2012 and 2013 to inspect product quality as the buyer from Non-Metals, and in 2015 after the contract to try to help settle the dispute after it arose." *Id.* p. 13. Sinoma insists the 2012 and 2013 visits to Iowa and exchange of business cards were not related to the July 22, 2014 contract at issue and therefore such "contacts" have no bearing on establishing specific personal jurisdiction. *Id.* p. 18.

In addition, Sinoma refutes Hawkeye Gold's repeated allegations within the Second Amended Complaint of an agency relationship between Sinoma and Non-Metals:

> [T]he evidence here is clear that Sinoma maintained its corporate formalities, financial affairs, and corporate records completely separate from those of Non-Metals—Non-Metals was duly registered in Arizona and Illinois; Non-Metals operated under its own by-laws and had separate officers; Non-Metals had its own bank accounts and no funds were commingled; and Non-Metals had its own employees and filed its own taxes.

*Id.* p. 14. Regarding Jason Mao's role, Sinoma contends as follows:

> at the time Jason Mao negotiated the Contract for the sale of feed at issue with [Hawkeye Gold] in May 2014, he was a Non-Metals' employee and used his Non-Metals email account to communicate with [Hawkeye Gold]; and only after certain

visa issues arose, did he go to work for Sinoma, in or about August 2014.

*Id.* p. 17. In sum, Sinoma argues:

> given the circumstances in this Action—a Chinese company that has no presence in Iowa, conducts no business directed at Iowa, is located six thousand miles away from Iowa, and was merely an arm's-length buyer from one of its non-Iowa subsidiaries who entered into a single purportedly "breached" contract with an Iowa entity—Sinoma respectfully submits that it would be unfair and unjust to assert personal jurisdiction over Sinoma in this matter.

*Id.* p. 19.

Hawkeye Gold, on the other hand, insists Sinoma's contacts with Iowa are sufficient to establish specific personal jurisdiction. Dkt. 168 pp. 8-14. Hawkeye Gold notes the visits of Sinoma employees to Iowa:

> Sinoma admits it "sent employees to visit" Hawkeye Gold in "Iowa in 2012 and 2013". Those visits were "[b]ecause of the large amount of DDGS that Non-Metals bought from Hawkeye [Gold] and resold to Sinoma". And "[i]n or around 2012, Ying Li," also a Sinoma manager, "visited Iowa to check [Hawkeye Gold's] qualification and quality of products"; and "[i]n or around 2013, Zonghuai Li and Jason Mao [also] visited Iowa" to do the same.
>
> Sinoma further admits it later sent two Sinoma employees to Iowa in April 2015 to meet with Hawkeye Gold representatives. Early in this litigation, Sinoma stated its representatives "went to Iowa in 2015 to explain the reasons that Non-Metals refused to accept the partial shipment from Hawkeye and why the Contract should be cancelled". In support of Sinoma's motion, Sinoma now claims the two Sinoma representatives (Jason Mao and Chao Wei) visited for the sole purpose of attempting "to settle the matter" involving the Contract. While Hawkeye Gold agreed to meet with Sinoma representatives for settlement in light of the huge loss it suffered, Sinoma had broader plans for the meeting with Hawkeye Gold, namely, "to discuss the DDGS trade collaboration, develop a feasibility plan for later partnership, conduct [a] site visit to assess the company, and evaluate its storage and logistic facilities".

*Id.* p. 10 (internal citations to record omitted).

In this regard, Hawkeye Gold maintains the role of Jason Mao was significant and misrepresented by Sinoma:

> As an initial matter, [Sinoma does not deny] Mao negotiated contracts with Hawkeye Gold in 2014 and that Mao's name is typewritten in the Contract. . . .

> Sinoma produced an employment agreement with Mao identifying Mao as Senior Manager of Feed Department at Sinoma from 2012 to 2015. Despite the representations that Mao worked for Non-Metals in 2014, the employment contract is with Sinoma only, without any mention of Non-Metals . . . .

*Id.* p. 11 (internal citations to record omitted).

Hawkeye Gold asserts "Mao's employment with Sinoma also is confirmed by emails delivered by Mao to Hawkeye Gold in each of 2013, 2014, and 2015, using Mao's Sinoma email address (maoyanjie@sinoma.cc) under the title "Senior Manager" of the "Feed Dept, Sinoma". *Id.* p. 12. From the perspective of Hawkeye Gold:

> Sinoma's senior manager, Mao, not only visited Hawkeye Gold on several occasions, negotiated the Contract, and had communications with Hawkeye Gold as a Sinoma manager in each of 2013, 2014, and 2015, Sinoma admits Mao also was a Sinoma representative who was asked on at least two occasions to resolve Non-Metals' disputes with Hawkeye Gold[.]

*Id.* p. 13.

Hawkeye Gold argues all the factors to be considered "in determining whether minimum contacts have been met clearly weigh in favor of personal jurisdiction over Sinoma." *Id.* p. 14. In Hawkeye Gold's view, "[t]he nature and quality, and quantity, of Sinoma's contacts with Iowa are substantial and relate to Hawkeye Gold's cause of action; Iowa has an interest in providing a forum for its resident; and the convenience of the forum was negotiated in the Contract." *Id.*

In addition, Hawkeye Gold argues personal jurisdiction is properly asserted over Sinoma because Non-Metals was acting as its agent or Sinoma's alter-ego. *Id.* pp. 14-16. In support, Hawkeye Gold primarily cites to several allegations within its Second Amended Complaint. *Id.* pp. 14-16. Hawkeye Gold notes such allegations, "construed in favor of Hawkeye Gold, are sufficient for notice pleading of these claims." *Id.* p. 16 n. 10. Hawkeye Gold also refers to a Sinoma brochure listing Non-Metals as a "branch" in Sinoma's organization structure and a report by a designated expert witness of Hawkeye Gold analyzing the principal-agent relationship and

piercing the corporate veil issues under Chinese law. *Id.* p. 16; *see* Dkt 168-1 pp. 13, 43-55.

Hawkeye Gold asserts "Sinoma has made misleading statements and engaged in misdirection relating to its corporate affiliations." Dkt. 168 p. 17. Thus, Hawkeye Gold suggests "traditional notions of fair play and substantial justice" would not be offended by exercising personal jurisdiction over Sinoma in this case.

In reply, Sinoma insists Hawkeye Gold overstates the evidence and significance of the Iowa visits and Jason Mao's employment status and email. Dkt. 169 pp. 3-5. Sinoma refers to the testimony of Zonghuai Li who was deposed as a Rule 30(b)(d) designated witness by Sinoma. *Id.* pp. 4-5. Li indicated he had been the general manager of Non-Metals and acknowledged Mao negotiated the July 22, 2014 contract with Hawkeye Gold. Dkt. 169-4 p. 3. At the time of the deposition, Li was employed with Sinoma as a vice general manager for business development and human resources. *Id.* Li testified as follows in response to questioning about Mao's employment:

> Q Was Jason Mao employed by Sinoma in 2013?
>
> A I think so.
>
> Q Was Jason Mao employed by Sinoma in 2014?
>
> A No. He worked for the US company. He was the staff of the US company. He worked for Non-Metals.
>
> Q Do you know whether Jason Mao ever worked at Sinoma in 2014?
>
> A . . . Regarding his situation, since I went to the US company, I was taking over Peter Wu's role. And also my English was not very good. In terms of business, I had to work together with Jason Mao to take over the Non-Metals business. So he and me, we both went to Non-Metals. However, in August, due to visa issues, Jason Mao returned to Sinoma.
>
> Q Were you aware that Jason Mao was an employee of Non-Metals in January of 2014?
>                                        * * *
> A Well, in January when he arrived in the US, when he arrives at Non-Metals, he

was the employee of Non-Metals.

Q Was Jason Mao an employee of Non-Metals in 2015?

* * *

A As I mentioned earlier, after August 2014 he returned to Sinoma, so he was the staff of Sinoma.

*Id.* pp. 4-5. Sinoma also submitted an affidavit of Zonghuai Li wherein he states:

> [An] issue I have been asked to address is whether Jason Mao was a Sinoma employee at any time that he negotiated the contract at issue in this case. He was not.

> Mr. Mao signed an employment contract with Sinoma in 2012, and although the term of his contract was for three years (from 2012 to 2015), Mr. Mao transferred to Non-Metals in January 2014, when I began work at Non-Metals and needed someone familiar with the business to assist me.

> Mr. Mao sent an email message to [Hawkeye Gold's] employees using a Sinoma email address on January 3, 2014. I am advised that [Hawkeye Gold] asserts that this message proves Mr. Mao must have been a Sinoma employee when he negotiated the contract between [Hawkeye Gold] and Non-Metals that was executed on July 22, 2014.

> Had I been asked about this matter during my deposition in this case several weeks ago, I would have explained that Mr. Mao did not begin work for Non-Metals until he arrived in the United States to work with me later in January 2014, and that Mr. Mao did not negotiate the contact at issue in this case while he was a Sinoma employee.

Dkt. 169-7 ¶¶ 4-7.

Sinoma also argues Hawkeye Gold has presented no evidence to support a theory of piercing the corporate veil to establish personal jurisdiction in this case. Dkt. 169 p. 5. According to Zonghuai Li, "Sinoma purchased [DDGS] from Non-Metals." Dkt. 169-4 p. 5. Li also explains the term "branch" utilized within the brochure which Hawkeye Gold relies upon:

> The brochure . . . uses a word that translates to "branch" in English in reference to several companies (i.e., Sinoma International Trade Company Limited, Tianjin Shi Yuan Fuel Material Company Limited, Shenzhen Branch, Non-Metals, Inc.), but the brochure also states that Sinoma had only three offices, which were located in Japan, Guangzhou and Qingdao, whereas Non-Metals was located in the United States and was not a branch of Sinoma. That is made clear on the next page (CHOW004729), which states that "[o]n June 8, 1993, Non-Metals, Inc. was

registered in the United States as a subsidiary wholly owned by China National Nonmetallic Minerals Industry Import & Export Corporation." On or about August 2009, China National NonMetallic Minerals Industrial Import & Export Corp. transferred Non-Metals to Sinoma in exchange of forgiveness of a loan. Thereafter, Non-Metals became a subsidiary wholly owned by Sinoma.

*Id.* ¶ 3.

In a sur-reply, Hawkeye Gold emphasizes the requisite evidentiary showing is minimal and the evidence must be viewed in its favor, including Zonghuai Li's testimony. Dkt. 173 pp. 2-3. From Hawkeye Gold's perspective, "evidence that multiple Sinoma employees traveled to Iowa to meet with Hawkeye Gold in connection with DDGS, and that Mao—one of the Sinoma employees who traveled to Iowa—was a Sinoma employee at the time he negotiated and executed the Contract, is more than enough to satisfy Hawkeye Gold's burden." *Id.*

### 3. Decision of the Court

This Court has fully considered the submissions and arguments of the parties. And as required, the Court has viewed the evidentiary materials presented by the parties in a light most favorable to Hawkeye Gold. In the opinion of the Court, Hawkeye Gold has not sufficiently met its burden of making a prima facie showing of personal jurisdiction over Sinoma. Consideration of the applicable five factors under the totality of the circumstances in this particular case weigh against this Court exercising personal jurisdiction over Sinoma as to the cause of action asserted by Hawkeye Gold.

To begin, the sales contract between Hawkeye Gold and Non-Metals is not a sufficient contact with Iowa to support personal jurisdiction over Sinoma. Foremost, Sinoma was not a party to the contract. Even when the dispute as to the role and employment of Jason Mao is viewed in favor of Hawkeye Gold, it remains as fact Sinoma was not a party to the contract.

Notably, both parties submitted portions of testimony by Mark Neher, a representative of Hawkeye Gold involved in the contracts with Non-Metals. Dkt. 168-1 pp. 28-35; Dkt. 169-6.

Neher repeatedly referred to Non-Metals as a "buying office for Sinoma" and acknowledged: "Non-Metals was the party on the contract"; "Non-Metals . . . is wholly owned by Sinoma"; and "Non-Metals is a subsidiary or wholly owned by Sinoma and it was in the United States. So . . . we recognize that there is a legal difference there." Dkt. 169-6 p. 3. When asked in part whether "Non-Metals was the company that you were doing business with and selling all of its DDGS to Sinoma," Neher responded "I believe you got it correct." *Id.* p. 5. Such testimony, in the reading of this Court, does not undermine but confirms Non-Metals was the corporate entity in contract with Hawkeye Gold, not Sinoma.

But even if Sinoma had been a party to the contract, "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979). "This is particularly true when all elements of the defendant's performance are to take place outside of the forum state." *Id.* at 1303-04. As further explained by the Eighth Circuit:

> "A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." [*K–V Pharm.,* 648 F.3d at 593] (citing *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185). "Personal jurisdiction, moreover, does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance." *Id.* (quoting *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185).

*Fastpath*, 760 F.3d at 821, 824 n. 4 ("even if the contract had been formed in Iowa . . . that would not vest Iowa courts with personal jurisdiction over" defendant); *see also Henry L. Firm v. Cuker Interactive, LLC*, 950 F.3d 528, 532 (8th Cir. 2020) ("A defendant does not subject itself to jurisdiction in a forum state by merely contracting with a resident of that state."); *Creative Calling*, 799 F.3d at 980 ("[A] contract with a citizen of a State alone is insufficient to establish minimum contacts with that forum.").

"To determine whether a defendant purposefully established minimum contacts with the

forum, [the court] must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Creative Calling*, 799 F.3d at 980 (quoting *Burger King,* 471 U.S. at 479); *see also Fastpath*, 760 F.3d at 821 ("[C]ourts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists."). "For contractual claims, personal jurisdiction is proper where the defendant 'reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state.'" *Creative Calling*, 799 F.3d at 980 (quoting *Burger King,* 471 U.S. at 473). The evidentiary materials presented to this Court fall short of showing Sinoma, as opposed to its United States subsidiary Non-Metals, reached out and created continuing relationships and obligations within Iowa. Again, resolution of Mao's role and employment in favor of Hawkeye Gold does not cure the deficiency in evidence in this regard.

The visits to Iowa by Sinoma employees fail to sufficiently support personal jurisdiction over Sinoma because the visits were limited in number and lack quality in relation to the cause of action brought by Hawkeye Gold. Based on evidence in the record before the Court, the nature and quantity of the visits by Sinoma employees are too attenuated from Hawkeye Gold's claim for breach of the July 22, 2014 contract with Non-Metals. *See Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 525 (8th Cir. 1992) ("Viewing the facts in the light most favorable to [plaintiff], . . . [defendant's] contacts with the forum State, including [its president's] trip to Minnesota and the subsequent telephone and mail communications between [defendant] in California and [plaintiff] in Minnesota, were too few in number and too attenuated from the cause of action to support jurisdiction."; affirming dismissal for lack of personal jurisdiction). The visits, even when viewed in favor of Hawkeye Gold, do not create a substantial connection between Sinoma and the state of Iowa nor do they establish Sinoma purposely availed itself of the privilege of conducting activities

within Iowa thereby subjecting Sinoma to the jurisdiction of Iowa courts.

The Iowa visit in 2015 also fails to support personal jurisdiction over Sinoma under guidance of the Eighth Circuit. "[C]ourts have hesitated to use unsuccessful settlement discussions as 'contacts' for jurisdictional purposes." *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 524 (8th Cir. 1996). As explained by the Eighth Circuit, "[g]iving jurisdictional significance to such activities may work against public policy by hindering the settlement of claims." *Id.* at 525. Moreover, the nature of the 2015 visit, even when viewed in favor of Hawkeye Gold, does not show Sinoma purposely availed itself of the privilege of conducting activities within Iowa or created a strong connection with Iowa.

Similarly, under Eighth Circuit precedent, the email referred to by Hawkeye Gold is insufficient in number and nature to establish personal jurisdiction over Sinoma. *See Fastpath*, 760 F.3d at 823-24 (some emails and phone calls from defendant to plaintiff in Iowa insufficient to establish personal jurisdiction); *Viasystems,* 646 F.3d at 593-94 (affirming dismissal for lack of personal jurisdiction because defendant's contacts consisting of scattered emails, phone calls and wire-transfer to forum state "are not sufficient to surmount the due-process threshold"); *Digi–Tel Holdings,* 89 F.3d at 523 (affirming dismissal for lack of personal jurisdiction where defendant's contacts with forum state consisted of "numerous letters and faxes and . . . several telephone calls" in connection with the contract in dispute).

Hawkeye Gold's reference to the contract's choice of forum provision also lacks weight to support personal jurisdiction over Sinoma. It is well-established that "although a choice-of-law provision may be considered for jurisdictional purposes . . . it is insufficient in itself to confer jurisdiction." *Digi–Tel Holdings*, 89 F.3d at 523; *see also Federated Mut.*, 928 F.3d at 721 ("'[C]hoice-of-law provisions specifying that the forum state's laws govern are insufficient on their own to confer personal jurisdiction.'" (quoting *K-V Pharm.*, 648 F.3d at 594)); *Creative*

*Calling*, 799 F.3d at 982 (forum selection clause "does not impact significantly" whether federal court may assume personal jurisdiction). Moreover, again, Sinoma was not a party to the contract containing the choice-of-law provision.

Under the totality of circumstances in this particular case, and upon viewing the *evidence* in a light most favorable to Hawkeye Gold, this Court finds the contacts between Sinoma and Iowa are not sufficient to comport with due process. In the opinion of this Court, the nature, quality and quantity of Sinoma's contacts with Iowa, and the relation of those contacts to Hawkeye Gold's asserted claims, do not sufficiently support this Court exercising specific personal jurisdiction over Sinoma. While Iowa has an interest in providing a forum for residents such as Hawkeye Gold to litigate its contractual disputes, the submitted evidence establishes Sinoma was not a party to the contract, including the testimony of Hawkeye Gold's own representative. And as to convenience of the parties, such consideration carries equal weight for the parties if not in favor of Sinoma as a registered Chinese company with its principal place of business in Beijing and with no offices or places of business in Iowa and no Iowa-based subsidiaries.

Hawkeye Gold's repeated allegations of an agency relationship between Non-Metals and Sinoma also fail to establish a prima facie case of personal jurisdiction over Sinoma. Contrary to Hawkeye Gold's suggestion, mere "notice pleading" is not sufficient. Instead, according to the Eighth Circuit, the "prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Fastpath*, 760 F.3d at 820 (quoted citation omitted). Doing so here, the submitted evidentiary materials fail to sufficiently support Hawkeye Gold's allegation of an alter-ego relationship between Non-Metals and Sinoma for this Court to exercise personal jurisdiction over Sinoma.

The evidence before this Court establishes Non-Metals was a wholly owned subsidiary of Sinoma. But "[w]hether a subsidiary is subject to personal jurisdiction in the state has no effect on

26

the jurisdictional inquiry regarding its parent." *Steinbuch*, 518 F.3d at 589. "'A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary.'" *Epps*, 327 F.3d at 649 (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). As explained by the Eighth Circuit,

> [its] cases consistently have insisted that "personal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."

*Viasystems,* 646 F.3d at 596 (quoting *Epps,* 327 F.3d at 648-49). Accordingly, "[b]efore a party may obtain personal jurisdiction over a parent company, the plaintiff must show that the parent dominates and controls the subsidiary; mere ownership of subsidiary is insufficient to justify personal jurisdiction." *Steinbuch*, 518 F.3d at 589 (citing *Epps*, 327 F.3d at 648-49).

Hawkeye Gold has not presented factual evidence showing Sinoma controlled and dominated the affairs of Non-Metals to the extent Non-Metals was acting as Sinoma's alter ego. Mere conclusory allegations within the complaint are not sufficient. The materials attached to Hawkeye Gold's complaint and submitted with its resistance do not show Non-Metals was an alter ego of Sinoma. Instead, the evidence shows Sinoma as a parent company in China was buying product from a wholly owned subsidiary in the United States which had contracted with an Iowa company to obtain the product. Such circumstances do not equate to an alter-ego relationship. Moreover, Hawkeye Gold's representative's own testimony is consistent with, not contrary to, this parent/subsidiary corporate structure. As emphasized by the Eighth Circuit, "we have always required a degree of control and domination by the parent corporation" for "a subsidiary's contacts with the forum state" to be attributed to the parent corporation. *Viasystems,* 646 F.3d at 596. Hawkeye Gold falls short of presenting such evidence to this Court.

On a final point, "[e]ven if the defendant has purposefully established the necessary

'minimum contacts' within the forum State, consideration of 'fair play and substantial justice' may nevertheless defeat the reasonableness of jurisdiction." *Sybaritic, Inc.*, 957 F.2d at 524 (quoting *Burger King*, 471 U.S. at 476-78); *see also Creative Calling*, 799 F.3d at 981 ("Even where a party has minimum contacts with a forum, jurisdiction can still be unreasonable."). "'[C]ritical to due process analysis . . . is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'" *Kaliannan*, 2 F.4th at 733 (quoting citations omitted). "The Due Process Clause forbids the exercise of personal jurisdiction under circumstances that would offend traditional notions of fair play and substantial justice." *Creative Calling*, 799 F.3d at 981-82 (internal quotation marks omitted) (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 (1987) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 (1945))). To assess whether the exercise of jurisdiction over a foreign defendant is reasonable, the court "considers the interests of the forum State, the burden on the defendant, and the plaintiff's interest in obtaining relief." *Id.* at 982. As further emphasized, "'[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Id.* (quoting *Asahi Metal Indus.,* 480 U.S. at 115); *Digi–Tel Holdings,* 89 F.3d at 525 (same).

Doing so here, this Court finds the notions of fair play and substantial justice of due process disfavors the exercise of personal jurisdiction over Sinoma under the particular circumstances of this case. Iowa certainly has an "'interest in providing a local forum in which its residents may litigate claims.'" *Creative Calling*, 799 F.3d at 982 (quoting *Digi–Tel Holdings,* 89 F.3d at 525). But, as noted by Sinoma, Hawkeye Gold has already brought an action within Iowa and obtained a judgment from this Court on the claim for breach of contract being asserted in this case. In contrast, Sinoma emphasizes the burden it faces as a company in China to litigate this matter in Iowa. In the words of the United States Supreme Court, "[t]he unique burdens placed upon one

who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus.,* 480 U.S. at 114.

For those reasons, even upon viewing the evidence in the most favorable light, Hawkeye Gold has not carried its burden of making a prima facie showing this Court has personal jurisdiction over Sinoma in this action. The requisite minimum contacts to comport with the constitutional requirements of due process are not present in the evidentiary record before the Court.

## C. Doctrines of Merger and Res Judicata/Claim Preclusion

Because the Court lacks personal jurisdiction over Sinoma, the motion as to application of the doctrines of merger and res judicata/claim preclusion barring Hawkeye Gold's claims is rendered moot.

## V. CONCLUSION

As set forth above, the Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 164) filed by defendant China National Materials Industry Import and Export Corporation d/b/a Sinoma shall be, and is hereby, granted. Because this Court lacks personal jurisdiction over defendant, this case must be dismissed.

IT IS SO ORDERED.

Dated July 25, 2022.

STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE